UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NICHOLAS STEWART HINES,<br><br>       Plaintiff,<br><br>vs.<br><br>JODY JOHNSON, YANKTON COUNTY CLERK OF COURTS, in her individual capacity, AND JANE OR JOHN DOE(S), in their individual capacities,<br><br>       Defendants. | 4:19-CV-04108-LLP<br><br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MISCELLANEOUS MOTIONS |

  Plaintiff, Nicholas Stewart Hines, is an inmate at the Yankton County Jail. He filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Pending before the court is defendant Jody Johnson's motion for summary judgment (Doc. 85) and miscellaneous motions by Hines (Docs. 84, 88, 101). For the reasons stated below, the Court grants Johnson's motion for summary judgment and denies Hines's motions.

**FACTUAL BACKGROUND**

  The Court recites the facts relevant to the remaining claims in the light most favorable to Hines because Johnson moves for summary judgment. Where facts relevant to the remaining claims are disputed, both parties' averments are included.

  Hines pleaded guilty to one count of first-degree manslaughter and was sentenced to 200 years in prison, with 100 years suspended, on June 7, 2012. Doc. 58-1 at 1-2. The judgment ordered Hines to "pay restitution through the Yankton County Clerk of Courts pursuant to the restitution sheet on file." *Id.* at 3. He was also ordered to pay $104 in court costs and an amount

for attorney's fees to be determined later. *Id.* $6,658.40 was later approved as the amount for attorney's fees. Doc. 58 ¶ 12. Hines claims that upon receiving a monthly account statement from the South Dakota State Penitentiary, he discovered that his court-ordered obligations were over $10,000,000. Doc. 27 at 21. He claims that he wrote to the Yankton County Clerk of Courts inquiring as to his restitution obligations during his first year of incarceration. *Id.* To support this claim, he cites to a letter to Johnson requesting his casefiles and a letter he wrote one of his attorneys, asking for help figuring out his restitution. Doc. 4-1 at 33, 39. He also claims that his attorney in a wrongful death suit in 2013 discovered "an administrative document showing a debt of $9,999,999.99" in his criminal file. Doc. 27 at 22. A judgment was entered against Hines in the wrongful death suit for $600,000.00 plus post-judgment interest. *Id.*

Despite years of efforts, Hines alleges that he was unable to discover any more information about his restitution. *Id.* In June 2017, Hines claims that he was told by a Unit Manager at the penitentiary that according to their system, Hines's financial obligations were correct, but the Unit Manager could not cite a source or document for those obligations. *Id.* at 23. Later that month, Hines claims that he briefly viewed a document on a Case Manager's desk which indicated that he owed $9,999,999.99 as restitution. *Id.* He also claims that he spoke with his habeas attorney at the time, Cheri Scharfenberg, who made repeated attempts to find his restitution sheet but was unable to do so. *Id.*

On May 2, 2018, Hines alleges that he received a monthly account statement indicating that his financial obligations had been reduced by $10,000,000. *Id.* He claims that he spoke with penitentiary staff, and he learned that an individual from Yankton County had called and told the staff to change his financial obligations. *Id.* He also claims that he observed penitentiary staff attempt to resolve this issue with Johnson by phone. *Id.* at 24. He was told in an informal

2

resolution response from a Unit Coordinator that this was not a DOC issue and to have his attorney contact the Yankton County Clerk. Doc. 6 at 17. Hines then sent notarized letters to Johnson on July 30, 2018, August 27, 2018, and March 8, 2019, requesting "original documentation and documentation supporting the changes made to the Plaintiff's Judgment[.]" Doc. 27 at 25-26. Specifically, he requested a copy of his restitution sheet and any documentation regarding the change in restitution in the first letter. Doc. 6 at 2. He repeated his request in the second letter, mentioned that a staff member at the Yankton County Clerk's Office had contacted the DOC to convey changes to his financial obligations without informing him, and included language stating that a refusal to reply would indicate that his "continued exclusion from this matter is intentional." *Id.* at 7. The third letter again emphasized the lack of communication and requested financial obligation information. *Id.* at 8. He claims that he received no response to these letters. Doc. 27 at 26. Hines alleges that he was needlessly exposed to the wrongful death suit because Johnson concealed his financial obligations. *Id.* at 27-28.

According to Johnson, the Unified Judicial System used software known as JAS for recordkeeping at the time of Hines's sentencing. Doc. 58 ¶ 13. Johnson claims that under JAS, all fields must be completed to record a judgment, and if a field was unknown, it should be filled with 9s to satisfy the software. *Id.* Johnson submitted a page from the instruction manual describing this procedure for restitution amounts. Doc. 58-2. Hines disputes the validity of this document because the "9999999.99" figure in the text has two digits overlapping. Doc. 67 ¶ 13. Johnson claims that because no restitution sheet had yet been filed and no specific restitution order existed at the time, she entered "$9,999,999.99" as a placeholder figure in Hines's restitution amount. *Id.* ¶¶ 13, 18. On February 28, 2013, the Unified Judicial System converted

records from JAS to new software. *Id.* ¶ 16. At this time, Johnson alleges that the $9,999,999.99 placeholder amounts were converted to zero. *Id.*

Johnson claims that between Hines's sentencing and the February 28, 2013, software conversion, Hines paid $112.50 towards costs and attorney's fees. *Id.* ¶ 15. Hines does not dispute this amount, but he alleges that the $112.50 was applied towards the $9,999,999.99 restitution owed. Doc. 67 ¶ 15. Johnson also claims that after the conversion and a rebalancing of Hines's payments and accounts, Hines owed $6,762.40, and that from that time until January 4, 2021, he has paid another $22. *Id.* ¶ 17. Hines disputes these claims, arguing that the restitution was in no way associated with the court costs or attorney fees, that he has paid $617.47 towards his court-ordered obligations as of November 20, 2020, and that his amount owed has increased despite these payments. Doc. 67 ¶ 17. Johnson claims that Hines has been represented by counsel since his initial charge, that she has no record of Hines's counsel contacting her regarding these issues, and that she has been advised in the past by judges "to deal with prisoners or inmates who have legal counsel only through their counsel." Doc. 58 ¶¶ 4-5. Hines argues that his habeas action "was terminated on May 13, 2014[,] and reopened on July 9, 2019[,]" so he was not represented by counsel when he sent the three letters to Johnson. Doc. 92 at 5. Johnson also claims that no restitution sheet was ever filed and that the reference to the restitution sheet on file in the judgment was an error on the part of the Yankton County State's Attorney Office. *See* Doc. 92-1 at 46. Johnson states that the filing of a restitution sheet is "not the responsibility of the Clerk of Courts but the responsibility of the State's Attorney." *Id.* at 45.

Hines argues that the entry of $9,999,999.99 was a valid entry of restitution that Johnson altered without a court order. Doc. 67 ¶ 13. Because the judgment references the "restitution sheet "on file[,]" Hines claims that it must have existed at the time of the judgment. Doc. 40 at 5.

4

He claims that because his judgment was finalized, the $9,999,999.99 entry was valid. *See id.* He cites to his sentencing transcript, where the court orally ordered him to "repay all of the restitution that is to be determined by this court[.]" *Id.* at 4 (citing Doc. 40-1 at 11). He argues that South Dakota caselaw requires the oral sentence to control over any differences in the written judgment. *Id.* at 5 (citing *State v. Ford*, 328 N.W.2d 263 (1982)). Thus, he believes that the entry of $9,999,999.99 fulfilled the court's determination of his restitution and was valid. *See id.* at 4-5. Hines claims that he was granted habeas relief vacating his sentence on June 28, 2021, after filing a state habeas corpus petition and that he is awaiting resentencing. Doc. 101 at 19. Although he does not provide the order granting habeas relief itself, he has submitted a copy of a notice of entry of this order from his attorney and portions of his amended habeas petition in which he has highlighted facts and allegations regarding his restitution. Doc. 92-1 at 3-4, 6-15.

## PROCEDURAL HISTORY

Hines first filed a complaint against Johnson, Yankton County, other Yankton County individual defendants, and SD DOC defendants on June 26, 2019. Doc. 1. After granting Hines leave to proceed in forma pauperis, this Court screened his complaint under 28 U.S.C. § 1915A and dismissed it. Docs. 9, 19. Hines moved to amend his complaint, and this Court granted that motion. Docs. 21, 24. Hines filed an amended complaint on August 10, 2020, which this court screened under § 1915A, dismissing Hines's claims in part and dismissing service in part. Docs. 27, 32. Specifically, Hines's First Amendment claims for violation of his right to access judicial records and Fourteenth Amendment claims for violation of his substantive due process rights against Johnson and the Yankton County Doe defendants in their individual capacities survived screening, and all other claims were dismissed. Doc. 32 at 15. Johnson now moves for summary

judgment on Hines's First Amendment and Fourteenth Amendment claims against her in her individual capacity. *See* Doc. 85 at 1.

## DISCUSSION

### I. Hines's Motion for Reconsideration Under Fed. R. Civ. P. 60(b)

Hines has filed a motion under Fed. R. Civ. P. 60(b) asking this Court to reconsider its denial of three of his previous motions. Doc. 101.

### A. Legal Standard

Federal Rule of Civil Procedure 60(b) authorizes a court to relieve a party from a final judgment, order, or proceeding under the following circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with a reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Just like Rule 59(e) motions, Rule 60(b) motions cannot be used "to 'tender new legal theories' " or to reargue "on the merits." *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)) (first quoted material); *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999) (second quoted material). To obtain relief under Rule 60(b)(6), a party must show that "exceptional circumstances . . . denied the moving party a full and fair opportunity to litigate his claim and . . . prevented the moving party from receiving adequate redress." *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005) (citation omitted).

### B. Motion for Court's Ruling and for Supplemental Pleadings

6

Hines previously filed a motion for Court's ruling and for supplemental pleadings. Doc. 44. This motion contained several requests which this Court denied. Doc. 66 at 9. Because Hines now moves for reconsideration of several of those requests, this Court will address each request individually.

### 1. Request to Rule on Rule 59(e) Reconsideration Motion

This Court screened Hines's amended complaint, dismissing it in part and directing service upon defendants in part. Doc. 32. Hines then filed a motion for reconsideration, asking this Court to reconsider its screening under Fed. R. Civ. P. 59(e). Doc. 34. The Eighth Circuit Court of Appeals has directed courts to consider such motions under Rule 59(e) or Rule 60(b), and this Court analyzed the motion under both rules and denied it. Doc. 43. Believing that this Court only construed his motion as a Rule 60(b) motion, Hines now asks this Court to consider his motion under Rule 59(e). Doc. 101 at 4-6.

Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." This Court held that Rule 59(e) was not the proper avenue for Hines's motion because Hines was "not moving to alter or amend a judgment, but rather this Court's Screening Order[.]" Doc. 43 at 1. Although Hines, in his current motion, continues to argue for his previous motion for reconsideration on the merits, he makes no argument that this Court erred in its assertion that Rule 59(e) can only be used to alter or amend a judgment. *See* Doc. 101 at 4-6. Instead, he merely argues that his motion would have been successful had it been analyzed under Rule 59(e) and that because he labelled it a Rule 59(e) motion, this Court should have done so. Thus, this request for reconsideration is denied.

### 2. Request to Supplement Pleadings

Hines filed a request to supplement pleadings in which he sought to bring additional claims against defendants dismissed from this suit in this Court's screening order. Doc. 44 at 2-9. Specifically, he sought to bring claims against SD DOC defendants for seizing his stimulus payments and against Yankton County defendants for assigning him a $4,090 confinement fee without his knowledge for time spent in the Yankton County Jail. *Id.* He now also claims that he was recently assessed another $4,090 fee for a time period during which he was not incarcerated at the Yankton County Jail. Doc. 101 at 9.

A court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "A supplemental pleading . . . is designed to cover matters subsequently occurring but pertaining to the original cause." *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977) (quoting *Berssenbrugge v. Luce Mfg. Co.*, 30 F. Supp. 101 (W.D. Mo. 1939)).

> The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed. Leave to file a supplemental complaint under Rule 15(d) rests with the court's discretion and should be freely granted if it will promote the just disposition of the case, not cause undue prejudice or delay, and not prejudice the rights of any parties. The court applies Rule 15(d) in a manner aimed at securing the just, speedy and inexpensive determination of every action–the standard applicable to motions to amend under [Rule] 15(d) is essentially the same standard that applies to [Rule] 15(a).

*Smith v. Brown*, 2018 WL 1440328, at *17 (D.S.D. Mar. 22, 2018) (quoting *Carl Zeiss Meditec, Inc. v. Xoft, Inc.*, 2011 WL 1326053 at *1 (D. Del. Apr. 5, 2011) (punctuation altered, internal citations omitted). "In exercising its discretion, the court should also consider whether 'the proposed pleading is futile in that it adds nothing of substance to the original allegations or is not germane to the original cause of action.' " *Id.* at *17 (quoting *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983)). A pleading is futile when it does not withstand a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6). *Moody v. Vozel*, 771 F.3d 1093, 1095-96 (8th Cir. 2014) (citation omitted). Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This Court found that Hines's proposed claims against SD DOC defendants were futile because Hines failed to state a claim for which relief could be granted. Doc. 66 at 2-5. This Court found that Hines's due process rights were not violated by the alleged deprivation of his property because state law provided an adequate post-deprivation remedy. *Id.* at 3-4. Hines now argues that this Court erred in this finding because, under *Hudson v. Palmer*, this analysis does not apply when the property deprivation is pursuant to established state procedure. *Id.* at 6-7 (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)). Further, Hines cites to *Lamar v. Hutchinson*, an Eastern District of Arkansas case in which a plaintiff's similar claims survived screening. *Id.* at 7 (citing *Lamar v. Hutchinson*, 2021 WL 3518625 (E.D. Ark. Aug. 10, 2021).[1]

The SD DOC defendants are no longer named defendants in this action, and the alleged stimulus payment seizure is in no way connected to the restitution claims that Hines brings against the remaining defendants. Under *Smith*, leave to file a supplemental complaint under Rule 15(d) is at the discretion of the Court. In this late stage of litigation, adding new defendants and new claims based on new facts will not promote just disposition and will cause undue delay. These claims, if Hines wishes to pursue them, are best suited for a new § 1983 complaint.

---

[1] Although Hines only cites the screening order in which some of the plaintiff's claims survived screening in *Lamar*, this Court notes that the plaintiff in *Lamar* was later granted a preliminary injunction because of his high likelihood of success on the merits on procedural due process and Takings Clause grounds. *See Lamar v. Hutchinson*, 2021 WL 4047158, at *16 (E.D. Ark. Sept. 3, 2021).

This Court also found that Hines's proposed claims against the Yankton County defendants were futile because Hines failed to state a claim for which relief could be granted. Doc 66 at 4-5. Hines again argues that he was deprived of his property pursuant to an established state procedure. Doc. 101 at 8-9. Hines refused to sign a Yankton County Notice of Confinement Costs form acknowledging his confinement fee, indicating that he did have notice of the fee and cannot state a due process claim for lack of notice. Doc. 44-1 at 64. Although he alleges that this form was deficient because of a handwritten edit and because statutes provided on the form do not apply to him, this does not implicate due process. *See* Doc. 44 at 7-8. Further, while Hines alleges that the form was deficient, he does not allege that he was not provided with this form. *See id.*

Hines's claim that he has been charged a second confinement fee for a nonexistent Yankton County Jail incarceration fails because this deprivation, as alleged, was not pursuant to an established state procedure. In *Logan v. Zimmerman Brush Co.*, the United States Supreme Court found that a plaintiff alleging that he was deprived of a property interest pursuant to an established state procedure challenges "not the . . . error, but the 'established state procedure' " itself. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982). Here, Hines does not claim that the Yankton County Jail has an established procedure for assessing confinement fees in violation of his due process rights. *See* Doc. 101 at 9. Instead, he alleges that the Yankton County Jail mistakenly assessed a confinement fee that should not have been assessed. *See id.* Thus, even with this additional information, Hines fails to state a claim for which relief could be granted against the Yankton County Jail. This request for reconsideration is denied.

### 3. Motion to Appoint Counsel and Motion for Preliminary Injunction

Hines filed a motion to appoint counsel and a motion for a preliminary injunction against Johnson preventing her from handling legal documents or participating in any legal actions pertaining to Hines in Yankton County. Docs. 46 & 52. This Court denied both motions. Doc. 66 at 5-8. For the reasons below, this Court grants Johnson's motion for summary judgment and dismisses Hines's claims. Thus, Hines's motion to reconsider the denial of these two motions is moot.

## II. Johnson's Motion for Summary Judgment

### A. Legal Standard

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A summary judgment motion must be supported by evidence on the record, which may include affidavits or declarations based upon personal knowledge. Fed. R. Civ. P. 56(c). The non-moving party is entitled to the benefit of having all reasonable inferences resolved in his or her favor, but the non-moving party must present specific facts showing a genuine issue for trial. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013). That is, a non-moving party must present "sufficient probative evidence" capable of supporting a finding in his or her favor, not "mere speculation, conjecture, or fantasy." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) (citation omitted).

Section 1983 creates civil liability for a person who, acting under the color of state law, deprives another of his or her federal constitutional or statutory rights. 42 U.S.C. § 1983. However, "[q]ualified immunity shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir.

2014) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, the plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Clearly established" law cannot be demonstrated at a high level of generality; rather, it must put officers on "fair notice." *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613, 616 (2015) (citations omitted).

### B. Access to Public Records Claim

Hines brings a claim against Johnson in her individual capacity for violating his First Amendment right to access public judicial records. Doc. 32 at 15. The Supreme Court has recognized a First Amendment and common law right of public access to court proceedings and records. *See, e.g.*, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986) (recognizing a "qualified First Amendment right of public access"); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (discussing the scope of the "common-law right of access to judicial records"). The Eighth Circuit, in considering the applicability of this right to the opening of sealed proceedings involving a handicapped child to the press, has explained that the analysis of this right would be the same under the First Amendment and under the common law. *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1374-75 (8th Cir. 1990).

Neither party has cited caselaw regarding the right to access public records in the context of a § 1983 complaint. Courts primarily analyze this right when considering whether to seal or unseal trial proceedings and documents. *See, e.g.*, *id.* at 1376. In this context, "[e]very court has

12

supervisory power over its own records[.]" *Id.* (quoting *Nixon*, 435 U.S. at 598). "When the common law right of access to judicial records is implicated, we give deference to the trial court rather than taking the approach of some circuits and recognizing a 'strong presumption' favoring access." *Id.* (quoting *United States v. Webbe*, 791 F.2d 103, 106 (8th Cir. 1986)). Johnson argues that this deference permits courts in Yankton County to issue a policy of only communicating with a prisoner's lawyers, rather than with the prisoner. Doc. 87 at 9. Johnson further argues that Hines's right to access public records was not violated because one of his attorneys was able to obtain a document showing Hines's financial assessments as of March 4, 2019. *Id.* This document showed that he owed $6,874.90. *Id.*

In order to overcome a qualified immunity defense, Hines must show that Johnson violated his First Amendment right to access public records and that this right was clearly established at the time that it was violated. Here, viewed in the light most favorable to the nonmoving party, the evidence does not show that Johnson violated Hines's right to access public records. Hines sent three letters to Johnson requesting his restitution sheet and documentation regarding the change to his restitution that he believed occurred on or around May 2, 2018. *See* Doc. 27 at 25-26. Johnson contends that no restitution sheet was ever filed, and Hines's restitution was never changed; instead, the information entered into Hines's record had been changed to keep up with the shift in recordkeeping software over five years prior, and for whatever reason, the records accessible by Hines while in SD DOC custody failed to reflect this change. *See* Doc. 58 ¶¶ 13, 19; Doc. 27 at 23. Hines disputes this contention but puts forth no evidence suggesting that the restitution sheet in question was ever filed other than to argue that "[a] 'restitution sheet' should unequivocally exist[.]". *See* Doc. 67 ¶ 19. Thus, Johnson did not fail to send Hines public records because the requested record did not exist. She failed to send an

explanation as to why the public records did not match his expectations. Further, regardless of whether Hines was represented by counsel at the time that he wrote the three letters to Johnson, Johnson believed that he had counsel and followed the advice of judges not to communicate with prisoners who had counsel. Doc. 58 ¶¶ 4-5. At most, Johnson failed to respond to three letters, at the advice of judges in her circuit, asking for an explanation regarding a complicated mistake involving multiple parties and moving parts. This does not rise to a constitutional violation.

Even if Hines could show that Johnson violated his right to access public records, he cannot show that this right was clearly established at the time of the deprivation. To show that a right was clearly established, the plaintiff must provide either "controlling authority . . . which clearly established the rule on which [he] seek[s] to rely" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The Supreme Court has noted, however, that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful[.]' " *United States v. Lanier*, 520 U.S. 259, 271 (1997) (first alteration in original) (quoting *Anderson*, 483 U.S. at 640). Here, Hines provides no cases of controlling or persuasive authority showing that § 1983 liability exists for deprivation of the right to access public records. He cannot satisfy the narrow exception under *Lanier* because he cites to no decisional law regarding any § 1983 cases involving this right or an applicable general constitutional rule. Thus, Johnson is entitled to qualified immunity on Hines's First Amendment claim.

### C. Substantive Due Process Claim

Hines brings a claim against Johnson in her individual capacity for violating his substantive due process rights under the Fourteenth Amendment. Doc. 32 at 15. For conduct to amount to a substantive due process violation, the plaintiff must allege facts to show that the state actor's conduct was conscience shocking. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)). A plaintiff must show conduct "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Buckley v. Ray*, 848 F.3d 855, 863 (8th Cir. 2017) (omissions n original) (quoting *Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016)). Mere negligence or even gross negligence does not rise to level of conscience shocking. *Hart v. City of Little Rock*, 432 F.3d 801, 805-06 (8th Cir. 2005) (citations omitted).

Here, Hines alleges that Johnson intentionally concealed and withheld information regarding his restitution. Doc. 27 at 27-28. He claims that his ability to pursue an appeal of his sentence and habeas relief regarding his restitution were impeded by Johnson. Doc. 92 at 8. He also claims that had he owed the $9,999,999 in restitution, he could have raised that as a defense in his wrongful death suit and could have avoided emotional stress and attorney's fees. *Id.* at 8-9. But these allegations are not supported by the evidence. Evidence shows that, at most, Johnson failed to respond to letters on the advice of the judges in her circuit. Hines cites to the Yankton County State's Attorney's return to his amended petition for writ of habeas corpus in which the State's Attorney argues that a due process claim regarding restitution should have been brought in direct appeal, not a habeas corpus petition. *Id.* at 9; Doc. 92-1 at 22. But the alleged concealment occurred in 2018 and 2019, well after Hines's appeal, so it could not have impeded

15

those claims. Further, Hines alleges that he has succeeded in his habeas efforts regarding his judgment, so that claim has not been impeded.

Hines cannot explain how his restitution would have provided a defense in his wrongful death suit. Had he owed $9,999,999 in restitution, any civil judgment against him would have been offset up to that amount under SDCL § 23A-28-9, but this is not a defense to be raised, and in any case, he did not owe that $9,999,999. Johnson's conduct does not rise to the "brutal and inhumane abuse of official power" contemplated by a violation of substantive due process rights under *Buckley*. Because no constitutional violation has occurred, Johnson is entitled to summary judgment on Hines's Fourteenth Amendment substantive due process claim.

### III. Claims Against the Yankton County Doe Defendants

"Jane or John Doe(s), Employed by Yankton County[,]" are named defendants served in this lawsuit against whom, in their individual capacities, Hines's claims for violation of his First and Fourteenth Amendment rights survived screening. Doc. 37 at 1-3; Doc. 32 at 15. Hines alleges that one or more individuals from the Yankton County Clerk of Courts Office communicated with penitentiary staff regarding his financial obligations. Doc. 27 at 23-24. Other than this one allegation, Hines's claims all involve conduct by Johnson, not the Doe defendants. Under 28 U.S.C § 1915(e)(2), the court "shall dismiss the case *at any time*" if it determines that the action fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2) (emphasis added). Hines only alleges that the Doe defendants played a very small role in Johnson's conduct for which this court has granted summary judgment to Johnson. Thus, Hines's claims against Jane or John Doe(s) in their individual capacities are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly, it is ORDERED:

1. That Johnson's motion for summary judgment (Doc. 85) is granted.

2. That Hines's motion for reconsideration under Fed. R. Civ. 60(b) (Doc. 101) is denied.

3. That Hines's request for hearing (Doc. 84) and motion for hearing of summary judgment motion (Doc. 88) are denied as moot.

4. That Hines's claims against Jane or John Doe(s) in their individual capacities are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

5. That judgment is entered in favor of Jody Johnson and Jane or John Doe(s) and against Nicholas Stewart Hines.

DATED March 10, 2022.

BY THE COURT:

ATTEST:
MATTHEW W. THELEN, CLERK

Lawrence L. Piersol
United States District Judge